UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DD, KARMA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-CV-1567 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| JOHN PANIAGUAS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

DD Karma is a maker of skin-care products. The company alleges that its former lawyer, John Paniaguas, committed professional negligence and breached his fiduciary duty to the company. R. 1-1, Compl. ¶ 1.[1] DD Karma split its Complaint into two counts: one for legal malpractice, and the other for breach of fiduciary duty. *Id.* ¶¶ 49–53. Paniaguas has moved to dismiss the fiduciary-duty claim for failure to adequately state a claim. Fed. R. Civ. P. 12(b)(6). R. 14, Def. Mot. Dismiss at 2.[2] For the reasons explained below, the motion is granted.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations set forth in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In around May 2013, DD Karma was founded to develop the "Dermaflash" product for at-home dermaplaning, a cosmetic procedure that exfoliates the top layers of the skin. Compl.

---

[1]This Court has diversity jurisdiction over the case. 28 U.S.C. § 1332. This suit is between parties of diverse citizenship, and the amount in controversy exceeds $75,000.
[2]Citations to the Docket are denoted as "R." followed by the docket entry number.

1

¶¶ 1, 8. In July 2013, DD Karma retained John Paniaguas to prepare, file, and prosecute a patent for the product. *Id.* ¶¶ 3,15.

### A. Design Drawings

Despite Paniaguas's expertise in patent law, DD Karma alleges, he apparently did not explain the fundamentals of this area of the law to his client. Compl. ¶ 17. He allegedly did not ask Dara Levy, the inventor and DD Karma's founder, how she came up with the idea for the device, or whether she had seen similar products for sale. *Id.* And he did not explain that a new design and new marketing program by themselves were not sufficient to obtain a utility patent. *Id.* Nonetheless, Paniaguas hired an industrial design company (called Starmoon, Ltd.) to prepare design drawings for the patent application. *Id.* ¶ 20. Through Boris Luchterhand, Starmoon's CEO, DD Karma learned that the design drawings for the "Dermaflash" patent application resembled the specifications of an already-patented device known as the "Bi-Hada," made by Kai USA. *Id.* ¶¶ 21–27. Paniaguas did not advise DD Karma that using specifications from an already patented product would considerably limit DD Karma's ability to patent the "Dermaflash" device. *Id.* ¶ 26. Instead, Paniaguas went ahead and used the design drawings provided by Starmoon for the patent application, even though they resembled the "Bi-Hada" specifications. *Id.* ¶ 28. In October 2013, Paniaguas filed an application to obtain a utility patent for the "Dermaflash" device. *Id.* ¶ 18.

### B. Prior Art

A few years later, in 2016, DD Karma sued Kai USA, alleging that Kai had breached a non-disclosure agreement and stolen DD Karma's trade secrets. Compl. ¶ 30. During settlement discussions, DD Karma learned that Paniaguas had failed to submit the Bi-Hada device as prior art to the Patent & Trademark Office (PTO) as part of the still-pending patent application for the Dermaflash. *Id.* ¶ 33. Based on the failure to disclose the prior art, Kai's attorney sent a letter to DD Karma and Paniaguas warning that if a patent was issued as a result of Paniaguas' failure to disclose the prior art, then Kai would "take every available step to have it declared invalid." *Id.* ¶ 35. Paniaguas never disclosed the prior art to the PTO despite his repeated affirmations that it needed to be disclosed. *Id.* ¶ 38.

### C. Retention of New Patent Attorney

In October 2017, DD Karma fired Paniaguas and retained a new patent attorney in his place. Compl. ¶ 39. Paniaguas did not inform the new patent attorney that he had not yet disclosed the prior art to the PTO. *Id.* ¶ 40. As a result, the new attorney continued the prosecution of the patent application without knowing about the Bi-Hada device and without consideration of its impact as prior art on the application. *Id.* Eventually, after all that effort, the new patent attorney learned about the Bi-Hada prior art, and shifted gears to prosecute other Dermaflash features that avoided the Bi-Hada prior art. *Id.*

In its complaint, DD Karma alleges that Paniaguas acted negligently in prosecuting the patent application and also breached his fiduciary duty to DD Karma.

3

The resulting damages include costs associated with the inadequate patent application, attorney fees wasted in preparing the application, and the fees incurred in hiring replacement counsel. Compl. ¶¶ 2, 40. In response, Paniaguas moves to dismiss the fiduciary-duty claim for failure to adequately state a claim. Fed. R. Civ. P. 12(b)(6); Def. Mot. Dismiss at 2.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir.2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief can be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

In the Complaint, DD Karma alleges that Paniaguas committed legal malpractice (Count 1) and breached his fiduciary duty (Count 2). Compl. ¶¶ 49–53. Paniaguas moves to dismiss the claim for breach of fiduciary duty, Def. Mot. Dismiss. ¶ 4, advancing two arguments. First, because the two claims rely on the same operative facts and allege the same damages, the two claims are impermissibly duplicative. Second, the fiduciary-duty claim relies on violations of the Illinois Rules of Professional Conduct, which does not give rise to an independent cause of action for civil damages. Def. Mot. Dismiss ¶¶ 4–5. Each argument is addressed in turn below.

### A. Duplicative Claims

Turning first to whether the claims are duplicative, Illinois courts have held that when a claim for breach of fiduciary duty relies on the same operative facts and results in the same injury as a legal-malpractice claim, one of the claims should be dismissed as duplicative.[4] *Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.*, 385

---

[4]Neither party explicitly addresses whether duplicity of claims is an issue of substantive law (thus governed by Illinois state law) or a procedural one (thus governed by the Federal Rules of Civil Procedure). But both parties rely on substantive Illinois law (which seems correct given that the issue is the proper scope of the alleged torts), so the Court too will treat this as an issue of substantive law. *See Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.*,

5

F.3d 737, 744 (7th Cir. 2004) (citing Illinois law). In one sense, fiduciary-duty claims and malpractice claims naturally overlap: a "fiduciary relationship exists as a matter of law between an attorney and his client." *Calhoun v. Rane*, 599 N.E.2d 1318, 1321 (Ill. App. Ct. 1992). So "any alleged malpractice by an attorney also evidences a simultaneous breach of trust." *Id.* But Illinois law still draws a line between the two: although there is overlap between the two claims, "that does not mean every cause of action for professional negligence also sets forth a separate and independent cause of action for breach of fiduciary duty." *Id.*

Although legal malpractice and breach of fiduciary duty are distinct in theory, in order to pursue these claims simultaneously, a plaintiff must adequately allege that the operative facts forming the basis for the purportedly separate claims are indeed separate, and similarly that the resulting injuries are separate. *Pippen v. Pedersen*, 986 N.E.2d 697, 705 (Ill. 2015). If the operative facts and injuries are truly separate, then separate claims are proper. *See Scanlan v. Eisenberg*, 913 F. Supp. 2d 591, 597–98 (N.D. Ill. 2012); *Mitchell v. Schoen*, No. 11 C 994, 2011 WL 2144211, at *2 (N.D. Ill. May 31, 2011), *Eckmann v. Diedrich*, No. 00 C 50227, 2001 WL 717489, at *2 (N.D. Ill. June 26, 2001). But simply repackaging the same facts into two purportedly separate claims "is the kind of formalist[ic] move that courts rightly reject," and should result in the dismissal of duplicative claims. *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1006 (N.D. Ill. 2008); *see also Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2019 WL 6467323, at *6–7

---

385 F.3d 737, 743–44 (7th Cir. 2004) (applying substantive Illinois law where parties assumed it applies).

(N.D. Ill. Dec. 2, 2019) (dismissing fiduciary-duty claim as duplicative where simultaneous representation of adverse client was also alleged as failure of professional standard of care); *Shaffer v. Respect, Inc.*, No. 97 C 4482, 1999 WL 281345 at *5 (N.D. Ill. Mar. 30, 1999) (dismissing fiduciary-duty claim as duplicative of legal-malpractice claim where both alleged same injury arising out of excessive legal fees).

In trying to premise the claims on separate facts, DD Karma highlights allegations in Paragraphs 50 and 53 that purportedly form separate bases for the negligence claim and fiduciary-duty claim, respectively. Compl. ¶¶ 50, 53. It is useful to begin there and compare those allegations to each other. In Paragraph 50, DD Karma alleges that Paniaguas committed negligence by:

a) failing to ask the Dermaflash inventor, Dara Levy, about the origin and circumstances of the invention to determine whether a good faith claim for patentability could be made;

b) using design drawings for the Patent Application which he knew were based on an existing prior art product;

c) asserting arguments and making amendments to the claims in response to office actions in prosecution of the Patent Application which were based on undisclosed prior art; and

d) failing to disclose known prior art during the prosecution of the Patent Application, thereby subjecting DD Karma to claims of inequitable conduct based on fraud on the United States Patent Office and lack of inventorship.

*Id.* ¶ 50. In Paragraph 53, Paniaguas allegedly breached his fiduciary duty by:

a) failing to act competently in preparing and prosecuting the Patent Application in violation of Rule 1.1 of the Illinois Rules of Professional Conduct and the USPTO Rules of Professional Conduct;

    b) failing to explain the matter to DD Karma to the extent necessary to permit DD Karma to make informed decisions regarding the representation, including but not limited to a decision to fund US and foreign patent prosecutions, in violation of Rule 1.4 of the Illinois Rules of Professional Conduct and the USPTO Rules of Professional Conduct;

    c) failing to act diligently in protecting DD Karma's interests once he became aware of the Bi-Hada prior art in violation of Rule 1.3 of the Illinois Rules of Professional Conduct and the USPTO Rules of Professional Conduct;

    d) failing to fully and honestly communicate with DD Karma regarding inventorship and prior art in violation of Rule 1.4 of the Illinois Rules of Professional Conduct and the USPTO Rules of Professional Conduct; and

    e) failing to disclose to DD Karma's subsequent patent attorneys information material to the representation, including but not limited to the prior art and the Trade Secret Litigation.

*Id.* ¶ 53. When comparing these two sets of allegations, the problem for DD Karma is that there is substantial overlap between the claims and, to the extent there are differences, there is no rhyme or reason why some allegations are pled as fiduciary-duty claim rather than a legal-malpractice claim. As explained next, this means the fiduciary-duty claim must be dismissed.[5]

    To begin, Paragraph 53(a) alleges that Paniaguas breached his fiduciary duty by failing "to act competently in preparing and prosecuting the patent application" in violation of a Rule of Professional Conduct. As a red-flag signal of the overlap in the

---

[5]That is the bad news for DD Karma. The good news is that the overlap means, by definition, that whatever allegations were brought under the umbrella of the fiduciary-duty claim is deemed as also brought under the legal-malpractice claim. So nothing of import is lost.

two claims, this generic allegation essentially encompasses *all* the allegations in Paragraph 50. What is the point of the fiduciary-duty claim if it encompasses all of the allegations in the malpractice claim, and vice-versa?

Moving on, but for the moment skipping Paragraph 53(b), the next subparagraph, Paragraph 53(c), overlaps with the allegations in Paragraphs 50(b), (c), and (d). Paragraph 53(c) broadly alleges that Paniaguas failed "to act diligently in protecting DD Karma's interest once he became aware of the … prior art." That is just another way of saying that he knowingly used design drawings based on existing prior art, Compl. ¶ 50(b); prosecuted the patent without accounting for undisclosed prior art, *id.* ¶ 50(c); and failed to disclose known prior art during the patent prosecution, *id.* ¶ 50(d). Similarly, Paragraph 53(d) is yet another broad allegation, asserting that Paniaguas failed to "fully and honestly communicate with DD Karma regarding inventorship." That resembles the allegation in Paragraph 50(a), which describes Paniaguas' alleged failure to ask Dara Levy (the inventor) about the origin of the "Dermaflash" device.

The two remaining subparagraphs of Paragraph 53 arguably do present allegations that are distinct from the facts asserted in Paragraph 50—but the allegations only end up highlighting how the Complaint arbitrarily assigns some facts to the malpractice claim and some (for no particular reason) to the fiduciary-duty claim. Paragraph 53(b) alleges that Paniaguas breached his fiduciary duty by "failing to explain the matter … to the extent necessary to permit DD Karma to make informed

9

decisions regarding the representation." But why would that kind of failure not qualify as legal malpractice? What makes that distinctly a fiduciary-duty claim? DD Karma does not explain. The same goes for Paragraph 53(e), which alleges that Paniaguas failed to tell the newly hired patent attorneys about the prior art. If a post-termination failure like that is a breach of fiduciary duty, then it is also legal malpractice. Indeed, in support of the fiduciary-duty claim, DD Karma explicitly relies on the attorney-client relationship:

> At all relevant times, *an attorney-client relationship existed* between Paniaguas as attorney and DD Karma as client. This fiduciary relationship created duties in Paniaguas to maintain the highest standards of fidelity, honesty, care, professionalism and good faith toward DD Karma, and to act in the best interests of DD Karma at all times during that relationship.

Compl. ¶ 52 (emphasis added). This is one of the evils of duplicative claims: the case is burdened with unnecessary complexity when, really, the operative facts and injuries form the basis of one type of claim. The legal-malpractice claim covers all the allegations and injuries no more and no less than the fiduciary-duty claim, so the latter claim is dismissed.

### B. Rules of Professional Conduct

It is worth noting that the other basis for Paniaguas's dismissal motion would have been rejected. Remember that Paniaguas also contends that the claim for breach of fiduciary duty relies on the Illinois Rules of Professional Conduct, which do not give rise to an independent cause of action. Def. Mot. Dismiss ¶ 5. It is true that a violation of professional ethics rules does not, on its own, give rise to a cause of action—they are *ethics* rules, not tort rules. *Doe v. Roe*, 681 N.E.2d 640, 649 (Ill. App.

Ct. 1997). But DD Karma did not equate violations of the Illinois Rules of Professional Conduct as automatic breaches of fiduciary duty. Rather, the Complaint cited the ethics rules as a supplement to the broader assertion that Paniaguas owed a fiduciary duty to DD Karma, and he violated it. Compl. ¶ 52 ("This fiduciary relationship created duties in Paniaguas to maintain the highest standards of fidelity, honesty, care, professionalism and good faith toward DD Karma, and to act in the best interests of DD Karma at all times during that relationship"). In any event, as explained earlier, the claims are duplicative so the fiduciary-duty claim fails for that reason.

## IV. Conclusion

For the reasons explained above, Paniaguas' motion to dismiss is granted. The claim for breach of fiduciary duty (Count 2) is dismissed. For now, the dismissal is without prejudice to DD Karma proposing an amended complaint that sets forth a truly distinct claim that can only be brought as a fiduciary-duty claim. As noted earlier, however, it probably is not worth trying to replead given that the legal-malpractice claim can serve as a vehicle for all the allegations.

ENTERED:

          s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 25, 2021